UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DALE HUHMANN,<br><br>         Plaintiff,<br><br> v.<br><br>FEDEX CORPORATION, *et al.*,<br><br>         Defendants. | Case No. 13-cv-00787-BAS(NLS)<br><br>**FINDINGS OF FACT AND<br>CONCLUSIONS OF LAW** |

BASHANT, Judge:

**I. INTRODUCTION**

  On June 28, 2013, Plaintiff Dale Huhmann ("Plaintiff") filed a First Amended Complaint against Defendant Federal Express Corporation, doing business as FedEx Express ("FedEx Express"), which alleged a violation of the Uniformed Services Employment and Reemployment Rights Act ("USERRA"), 38 U.S.C. §§ 4301-4335. (ECF No. 11 ("FAC").)

  This matter was set for a bench trial, which took place on April 1, 2015. The Court heard and weighed the testimony and evidence presented at trial. Based upon the testimony and exhibits received into evidence at trial, and after full consideration of the legal arguments of the parties, the Court issues the following findings of fact

and conclusions of law pursuant to Rule 52(a) of the Federal Rules of Civil Procedure.

## II.   FINDINGS OF FACT[1]

1. Plaintiff is a citizen of the United States and a resident of the State of Washington.

2. Plaintiff was a Lieutenant Colonel in the Unites States Air Force Reserve.  He was first commissioned in the United States Air Force in 1985.  Plaintiff retired from the United States Air Force Reserve on September 1, 2006.

3. FedEx Express is a corporation organized under the laws of the State of Delaware.  FedEx Express' principal place of business is Memphis, Tennessee.

4. Plaintiff was hired by FedEx Express as a pilot on July 2, 2001 based in Memphis, Tennessee as a 727 Second Officer ("727 S/O").

5. The Boeing 727 aircraft is classified as a "narrow body" aircraft for pay purposes.  The term "NBS/O" means "Narrow Body Second Officer."

6. Plaintiff was selected for training for the position of ANC MD-11 First Officer ("MD-11 F/O"), a higher paying position.  Plaintiff was scheduled to begin MD-11 F/O training on February 19, 2003.

7. The MD-11 aircraft is classified as a "wide body" aircraft for pay purposes.  The term "WBF/O" means "Wide Body First Officer."

8. Plaintiff was mobilized on active military duty on February 7, 2003 and deployed overseas in support of Operation Iraqi Freedom and Operation Enduring Freedom until August 31, 2006.

9. Plaintiff timely notified FedEx Express of his intent to be re-employed

---

[1] To the extent these Findings of Fact are also deemed to be Conclusions of Law, they are hereby incorporated into the Conclusions of Law that follow.  In the Pretrial Order, the parties agreed that certain facts were admitted and required no proof at trial.  (*See* ECF No. 35 at § III.)  The Court incorporates the admitted facts herein; however, the Court has added to certain facts based on trial testimony and the exhibits admitted during trial.

after his completion of military service.

10. Plaintiff exercised his right provided by USERRA to take a full ninety days before returning to work at FedEx Express. Plaintiff returned to FedEx Express on December 1, 2006.

11. Plaintiff was placed back in active pay status upon his return on December 1, 2006.

12. After returning from military leave, Plaintiff was given the option of returning to his crewmember position as a 727 S/O or entering training for one of ten other positions. Plaintiff reviewed the bid packs for several positions and selected a Memphis-based ("MEM") MD-11 F/O position.

13. Plaintiff started training for the MEM MD-11 F/O position in the next available training class that began on December 4, 2006.

14. Plaintiff successfully completed the MD-11 F/O training and was activated as an MD-11 F/O on February 22, 2007.

15. While Plaintiff was in training for an MD-11 F/O position, he was paid the pay rate of a 727 S/O.

16. Plaintiff is a member of the bargaining unit represented by the Air Line Pilots Association ("ALPA").

17. Pursuant to a Settlement Agreement between ALPA and FedEx Express, Plaintiff was designated an MD-11 F/O by FedEx Express for imputed earnings purposes effective May 24, 2003, and his retirement contributions were made for the duration of his military leave based on the pay rate of an MD-11 F/O.

18. On August 26, 2006, FedEx Express issued a letter to ALPA in which it outlined the payment of a "signing bonus" to be paid to FedEx Express crewmembers (the "Bonus Letter").

19. According to the Bonus Letter, pilots employed by FedEx Express as pilots on the day the collective bargaining agreement was signed (the "DOS") and who were in active pay status throughout the entire "amendable period" would

receive the full signing bonus. The amendable period described in the Bonus Letter ran from June 1, 2004 through October 30, 2006.

20. According to the Bonus Letter, pilots employed by FedEx Express as pilots on the DOS but who were not active for the entire amendable period would receive a prorated bonus. This included pilots hired during the amendable period and pilots who were in an inactive pay status during the amendable period due to leave of absence or disability.

21. According to the Bonus Letter, periods of military leave during the amendable period were counted as active service for purposes of the signing bonus calculation. Plaintiff was on military leave of absence during the entire amendable period.

22. According to the Bonus Letter, each pilot's bonus category was determined by the highest crew status the pilot held during the amendable period.

23. According to the Bonus Letter, pilots who were on long term military leave would receive their signing bonus payments upon their return to active service with FedEx Express.

24. According to the Bonus Letter, the total signing bonus for a NBS/O, which includes a 727 S/O, was $7,400.00.

25. According to the Bonus Letter, the total signing bonus for a WBF/O, which includes an MD-11 F/O, was $17,700.00.

26. Upon his return to FedEx Express, Plaintiff was paid a $7,400.00 signing bonus in two installments, the first in January 2007, and the second in May 2007, based on his position as a 727 S/O.

27. On March 18, 2010, Plaintiff filed a complaint with the Department of Labor Veterans' Employment and Training ("DOL-VETS"), Case Number TN-2010-00020-10-R as a result of his reduced signing bonus.

28. On April 30, 2010, DOL-VETS issued a letter outlining its findings to Defendant in which it determined that FedEx Express violated USERRA and 20

C.F.R. §1002.193 and that Plaintiff was entitled to the difference between the 727 and MD-11 signing bonuses ($10,300.00), plus interest.

29. The process by which a pilot qualifies as an MD-11 F/O includes the following steps: (1) on the ground systems training and learning about the aircraft; (2) training in a fixed flight simulator; (3) training in a moving flight simulator; (4) flying the aircraft with an instructor pilot on board; and (5) a validation flight or "check ride" in which the instructor "simply observes and grades." Only after a pilot passes the final validation flight or check ride is the pilot qualified to operate the aircraft. There is no guarantee a pilot will complete training and qualify.

30. Plaintiff testified that completing training and qualifying is "a big deal, especially for the MD-11s," as the MD-11 is "a very technical plane." At each step in the training, a pilot has a "check" or test they have to pass. If the pilot doesn't pass, he or she does not continue with the training. Plaintiff explained the process as follows:

> So ground school, after two weeks of system study you sit down with an instructor and they grill you on the plane, the systems knowledge you have to have very good systems knowledge and then the procedural trainer you go through that that's switchology check list emergency procedures. Again a check ride. And then the simulator phase. You know, several Sims, I forget how many, but more than ten, less than 250, but lots of Sims, and again they're stressful Sims. You do engine out procedures, two engine out procedures, you know, it's – they call it the disco Sim because there's so many lights flashing and that's the biggie you have to pass that and do well before you can move on to then actually train in the aircraft, and that involves completing a training guide which depending on how well you do it can take, you know, five or six tries or even more depending on how the instructor feels you're doing, and then you have to – he stands back and lets you do the job as you're trained to do, and you have to pass – he signs you off, and he basically is putting his name on the line that you're qualified, so it's a big deal and it takes a long time.

31. Plaintiff further testified that "[e]specially in the MD-11, there are people that don't make it. It is the toughest [Fedex Express] plane to master."

32. During his training, Plaintiff did not fail any academic events, simulators, or check rides.

33. Plaintiff is currently employed as an MD-11 F/O.

34. FedEx Express employees are given seniority numbers based on date of hire. After Plaintiff qualified and was activated as an MD-11 F/O, there were MD-11 F/O's with both higher and lower seniority numbers.

### III.  CONCLUSIONS OF LAW[2]

1. The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 38 U.S.C. § 4323(b)(3).

2. Venue is proper pursuant to 38 U.S.C § 4323(c)(2) and 28 U.S.C. § 1391(b) because FedEx Express maintains a place of business in this district.

3. At all relevant times, Plaintiff was a qualified employee and member of the uniformed services for purposes of 38 U.S.C. § 4303(3), (9), and (16).

4. At all relevant times, FedEx Express was, and is, an employer for purposes of 38 U.S.C. § 4303(4)(A) and § 4323(i).

5. Congress enacted USERRA (1) "to encourage noncareer service in the uniformed services by eliminating or minimizing the disadvantages to civilian careers and employment which can result from such service"; (2) "to minimize the disruption" to the lives of servicemembers and their employers "by providing for the prompt reemployment of such persons upon their completion of such service"; and (3) to prohibit discrimination against servicemembers.  38 U.S.C. § 4301(a); *see also Paxton v. City of Montebello*, 712 F. Supp. 2d 1007, 1010 n. 7 (C.D. Cal. 2010); *United States v. Nevada*, 817 F. Supp. 2d 1230, 1236-37 (D. Nev. 2011); *Rivera-Meléndez v. Pfizer Pharm., LLC*, 730 F.3d 49, 54 (1st Cir. 2013).

6. In enacting USERRA, "Congress made clear that, to the extent consistent with USERRA, the large body of case law that had developed under

---

[2] To the extent any Findings of Fact are contained in the Conclusions of Law, they are hereby incorporated into the preceding Findings of Fact.

previously enacted federal laws protecting veterans' employment and reemployment rights remained in full force and effect." *Rivera-Meléndez*, 730 F.3d at 54 (citing 20 C.F.R. § 1002.2) (internal quotation marks omitted).

7. "Because USERRA was enacted to protect the rights of veterans and members of the uniformed services, it must be broadly construed in favor of its military beneficiaries." *Montoya v. Orange Cnty. Sheriff's Dep't.*, 987 F. Supp. 2d 981, 1009 (C.D. Cal. 2013) (quoting *Francis v. Booz, Allen & Hamilton, Inc.*, 452 F.3d 299, 303 (4th Cir. 2006)); *see also Earls v. Atchison, Topeka & Santa Fe Ry.*, 532 F.2d 133, 136 (9th Cir. 1976) (citing *Fishgold v. Sullivan Drydock & Repair Corp.*, 328 U.S. 275, 285 (1946)); *Rivera-Meléndez*, 730 F.3d at 54.

8. USERRA "supersedes any State law (including any local law or ordinance), contract, agreement, policy, plan, practice, or other matter that reduces, limits, or eliminates in any manner any right or benefit provided by [USERRA], including the establishment of additional prerequisites to the exercise of any such right or the receipt of any such benefit." 38 U.S.C. § 4302(b).

9. USERRA forbids employment discrimination on the basis of membership in the armed forces. *Townsend v. Univ. of Alaska*, 543 F.3d 478, 482 (9th Cir. 2008) (citing 38 U.S.C. §§ 4301(a)(3), 4311(a)). Plaintiff contends FedEx Express violated USERRA by "discriminating against Plaintiff, and by denying him employment benefits 'on the basis of' his 'obligation to perform service in a uniformed service.'" (FAC at ¶ 36.)

10. USERRA's anti-discrimination provision, 38 U.S.C. § 4311 ("Section 4311"), provides that "[a] person who is a member of, … performs, has performed, … or has an obligation to perform service in a uniformed service shall not be denied … reemployment, … promotion, or *any benefit of employment* by an employer on the basis of that membership, … performance of service, … or obligation." 38 U.S.C. § 4311(a) (emphasis added). An employer will be held liable for discriminatory denial of a benefit of employment, if the person's membership,

service, or obligation for service in the military "is a motivating factor in the employer's action, unless the employer can prove that the action would have been taken in the absence of such membership, . . . service, . . . or obligation for service." 38 U.S.C. § 4311(c)(1); *Townsend*, 543 F.3d at 482.

11.     USERRA defines the terms "benefit", "benefit of employment", and "rights and benefits" to mean:

> the terms, conditions, or privileges of employment, including any advantage, profit, privilege, gain, status, account, or interest (including wages or salary for work performed) that accrues by reason of an employment contract or agreement or an employer policy, plan, or practice and includes rights and benefits under a pension plan, a health plan, an employee stock ownership plan, insurance coverage and awards, *bonuses*, severance pay, supplemental unemployment benefits, vacations, and the opportunity to select work hours or location of employment.

38 U.S.C. § 4303(2) (emphasis added).

12.     An employee making a claim under Section 4311 "first has the burden of showing, by a preponderance of the evidence, that his or her protected status was 'a substantial or motivating factor in the adverse [employment] action;' the employer may then avoid liability only by showing, as an affirmative defense, that the employer would have taken the same action without regard to the employee's protected status." *Wallace v. City of San Diego*, 479 F.3d 616, 624 (9th Cir. 2006) (citing *Leisek v. Brightwood Corp.*, 278 F.3d 895, 899 (9th Cir. 2002); *NLRB v. Transp. Mgmt. Corp.*, 462 U.S. 393, 401 (1983)); *see also* 20 C.F.R. § 1002.22. "An employer therefore violates Section 4311 if it would not have taken the adverse employment action but for the employee's military service or obligation." *Montoya*, 987 F.Supp.2d at 1009.  An employee may establish discriminatory motivation by direct or circumstantial evidence. *Sheehan v. Dep't of Navy*, 240 F.3d 1009, 1014 (Fed. Cir. 2001).  "The court may consider all record evidence, including the employer's explanation for the actions taken." *Leisek*, 278 F.3d at 900 (citing

*Sheehan*, 240 F.3d at 1014 (internal quotations omitted)).

13. For a servicemember whose period of service in the uniformed services exceeded 90 days, section 4313(a)(2)(A) of USERRA provides, in relevant part, that the servicemember is entitled to be promptly reemployed "in the position of employment in which the person *would have been employed* if the continuous employment of such person with the employer had not been interrupted by such service, or a position of like seniority, status and pay, the duties of which the person is qualified to perform." 38 U.S.C. § 4313(a)(2)(A) (emphasis added); *Rivera-Meléndez*, 730 F.3d at 54. This is known as the "escalator position" or "escalator principle." *Rivera-Melendez*, 730 F.3d at 54; 20 C.F.R. § 1002.191. Therefore, a returning service member "does not step back on the seniority escalator at the point he stepped off," but "steps back on at the precise point he would have occupied had he kept his position continuously" while away from the job for his military service. *Fishgold*, 328 U.S. at 284-85; *see also Batayola v. Municipality of Metro. Seattle,* 798 F.2d 355, 358 (9th Cir. 1986); *Rogers v. City of San Antonio*, 392 F.3d 758, 763 (5th Cir. 2004); *DeLee v. City of Plymouth*, 773 F.3d 172, 175 (7th Cir. 2014); *Rivera-Meléndez*, 730 F.3d at 54; 20 C.F.R. § 1002.191.

14. "As a general rule, the employee is entitled to reemployment in the job position that he … would have attained with *reasonable certainty* if not for the absence due to uniformed service." 20 C.F.R. § 1002.191 (emphasis added); *see also* 20 C.F.R. § 1002.192; *Rivera-Meléndez*, 730 F.3d at 54.

15. "If an opportunity for promotion, or eligibility for promotion, that the employee missed during service is based on a skills test or examination, then the employer should give him … a reasonable amount of time to adjust to the employment position and then give a skills test or examination." 20 C.F.R. § 1002.193(b). "If the employee is successful on the makeup exam and, based on the results of that exam, there is a *reasonable certainty* that he or she would have been promoted, or made eligible for promotion, during the time that the employee served

1  in the uniformed service, *then the promotion or eligibility for promotion must be
2  made effective as of the date it would have occurred had employment not been
3  interrupted by uniformed service*." 20 C.F.R. § 1002.193(b) (emphasis added); *see
4  also* 70 Fed. Reg. 75,246, 75,271 (Dec. 19, 2005), available at 2005 WL 3451172,
5  *75272-73 ("[U]pon successfully meeting [] evaluative standards, the employee's
6  reemployment position should be adjusted based on the prior date he or she would
7  have completed the process had he or she not entered military service.")

8        16.    The "reasonable certainty" test applies to discretionary or non-
9  automatic promotions. *Rivera-Meléndez*, 730 F.3d at 56-58 (holding that the
10 escalator principle and reasonable certainty test apply regardless of whether the
11 promotion at issue is automatic or non-automatic); 70 Fed. Reg. 75,246, 75,271
12 (Dec. 19, 2005), available at 2005 WL 3451172, *75271 (noting that "Sections
13 1002.191 and 1002.192 [of the USERRA regulations] … incorporate[] the
14 reasonable certainty test as it applies to discretionary and non-discretionary
15 promotions"); *Evans v. MassMutual Fin. Grp.*, 856 F. Supp. 2d 606, 612 (W.D. N.Y.
16 2012) (noting that USERRA "does not require promotion or advancement to be a
17 'foregone conclusion,' but a 'reasonable certainty'").

18       17.    Therefore, the "appropriate inquiry in determining the proper
19 reemployment position for a returning servicemember is not whether an
20 advancement or promotion was automatic, but rather whether it was reasonably
21 certain that the returning servicemember would have attained the higher position but
22 for his absence due to military service." *Rivera-Meléndez*, 730 F.3d at 56 (reading
23 together *Tilton v. Mo. Pac. R.R. Co.*, 376 U.S. 169 (1964) and *McKinney v.
24 Missouri-Kansas-Texas R.R. Co.*, 357 U.S. 265 (1958)). "This requirement is met if,
25 as a matter of foresight, it was reasonably certain that advancement would have
26 occurred, and if, as a matter of hindsight, it did in fact occur." *Tilton*, 376 U.S. at
27 181.
28 ///

18. In *Pomrening v. United Air Lines, Inc.*, 448 F.2d 609 (7th Cir. 1971), the Seventh Circuit applied the "reasonable certainty" test in the context of an airline pilot training program. *Id*. at 611. In *Pomrening*, the pilot training program was "filled with tests, examinations and evaluations and . . . if any trainee fail[ed] to meet the standards demanded by [the airline], he [wa]s dismissed from the program and from [the airline]'s employ." *Id*. at 612. The pilots were not required to score 100% on each test, however, and were given a second opportunity to pass if a failing grade was received. *Id*. The Seventh Circuit determined that a pilot meets *Tilton*'s reasonable certainty test if the following two factors are present: (1) it appears, as a matter of foresight, that pilot trainees who successfully complete the airline's training course are regularly advanced in flying status; and (2) it appears, as a matter of hindsight, that the pilot trainee would have probably completed his training in the normal course had it not been interrupted by his military service. *Id.* at 613. In *Pomrening*, the Seventh Circuit found both factors present because the airline awarded flight status to "all trainees who successfully met th[e airline's] standards during the training period," and the pilot in question successfully completed the training program, was awarded flight status, and after that time, "passed all required proficiency checks and performed all duties and assignments in a satisfactory manner." *Id*. at 614-15. Accordingly, the Seventh Circuit held the pilot was "entitled to the pilot seniority number he would have obtained had he completed the [airline's] training program" with the class to which he was originally assigned. *Id*. at 616.

19. Upon Plaintiff's return from military service, in accordance with 38 U.S.C. § 4313 and 20 C.F.R. § 1002.193(b), FedEx Express gave Plaintiff the opportunity to train and qualify for an MD-11 F/O position. Plaintiff thereafter passed every qualifying exam and qualified as an MD-11 F/O.

20. Applying the test outlined by *Tilton* and *Pomrening*, for the reasons set forth below, the Court finds there is reasonable certainty that Plaintiff would have

achieved MD-11 F/O status as originally scheduled if his employment had not been interrupted by his military service. While Plaintiff testified the process to qualify as an MD-11 F/O is not an easy one, requires passing difficult exams at each stage of training, and some trainee pilots fail, trainees are given multiple opportunities to pass, and each pilot who passes qualifies as an MD-11 F/O. Thus, the first factor of the test is met. Next, it is indisputable that Plaintiff, a military pilot, was selected for the training prior to his departure, thereby indicating he was qualified for the training, and Plaintiff thereafter did complete his training in approximately three months. He did not fail any academic events, simulators, or check rides during his training. He has subsequently been employed as an MD-11 F/O since February 2007. Accordingly, the Court finds, as a matter of hindsight, that Plaintiff would have probably completed his training as originally scheduled had his employment not been interrupted by his military service. Thus, the Court finds the second factor has been met.

21. Because there is reasonable certainty Plaintiff would have been promoted to MD-11 F/O status as originally scheduled, this status must be made effective "as of the date it would have occurred had [Plaintiff's] employment not been interrupted by uniformed service." 20 C.F.R. § 1002.193(b); *see also Tilton*, 376 U.S. at 181 ("A returning veteran cannot claim a promotion that depends solely upon satisfactory completion of a prerequisite period of employment training unless he first works that period. But upon satisfactorily completing that period …, he can insist upon a seniority date reflecting the delay caused by military service."); *Pomrening*, 448 F.2d at 616. Although there is no automatic date Plaintiff's promotion would have occurred, the Court finds there is reasonable certainty it would have occurred prior to the amendable period described in the Bonus Letter (June 1, 2004 through October 30, 2006). In light of the facts Plaintiff was initially scheduled to begin MD-11 F/O training on February 19, 2003, and he subsequently completed the training in approximately three months, there is reasonable certainty

Plaintiff would have been activated as a MD-11 F/O in or around May 2003 if his employment had not been interrupted by his military obligations.

22. Plaintiff's signing bonus under the Bonus Letter is determined by his "bonus category," which is determined by the highest crew status he held during the amendable period. Based on the foregoing, it is reasonably certain Plaintiff's highest crew status during the amendable period would have effectively been the M/D-11 F/O position. On this basis, the Court finds Plaintiff's bonus category is that of a WBF/O and he was entitled to a signing bonus of $17,700.[3]

23. FedEx Express has not demonstrated that it would have denied Plaintiff the WBF/O signing bonus in the absence of his military leave. FedEx Express has not offered any explanation for the denial of the benefit other than Plaintiff's military service. FedEx Express argues instead that Plaintiff is not entitled to preferential treatment under USERRA and the Court must first determine whether the bonus at issue is a seniority-based benefit under 38 U.S.C. § 4316. The Court agrees Plaintiff is not entitled to preferential treatment, *see Rogers,* 392 F.3d at 769-70; however, it disagrees that placing Plaintiff in the position he would have held with reasonable certainty if he had not been absent for military service, and granting him the benefits determined by that position, is preferential treatment. Rather, it comports with the purposes of USERRA. The Court considers the issue of whether

---

[3] The Court further notes that Plaintiff is entitled to the pay associated with the escalator position, including any "pay increases, differentials, step increases, merit increases, or periodic increases that the employee would have attained with reasonable certainty had he or she remained continuously employed during the period of service." 20 C.F.R. § 1002.236(a); *see also* 20 C.F.R. 1002.193(a); *Serricchio v. Wachovia Secs. LLC*, 658 F.3d 169, 183-85 (2d Cir. 2011) (quoting favorably Department of Labor's interpretation under prior reemployment law that "'[t]he "pay" protected under the statutes includes all elements of pay, such as traveling expenses, drawing accounts, hourly rates, piece rates, *bonuses*, etc.'") (emphasis added); 20 C.F.R. § 1002.236(a) ("Any pay adjustment must be made effective as of the date it would have occurred had the employee's employment not been interrupted by uniformed service.").

or not the bonus is a seniority-based benefit to be somewhat of a red herring considering the circumstances of this case. The parties do not dispute that Plaintiff was entitled to the full amount of the appropriate signing bonus upon his return to active service with FedEx Express, even though he was on military leave during the entire amendable period. The Bonus Letter automatically grants the signing bonus in full to employees absent for military service during the entire amendable period. Rather, the parties dispute Plaintiff's highest effective crew status during the amendable period. The Court finds that question is resolved by application of the escalator principle, 38 U.S.C. § 4313, and 20 C.F.R. § 1002.193(b).[4]

24. Accordingly, the Court finds FedEx Express violated Section 4311 of USERRA by denying Plaintiff a signing bonus of $17,700 under the Bonus Letter. Plaintiff is entitled to the difference between the bonus he received and $17,700, which is $10,300.

25. Plaintiff also seeks liquidated damages. Under USERRA's remedy provision, the Court may require the employer to pay liquidated damages in an amount equal to the employee's actual damages, "if the court determines that the employer's failure to comply with the provisions of [USERRA] was willful." 38 U.S.C. § 4323(d)(1)(C). In the absence of any Ninth Circuit cases on point, courts have imputed the liquidated damages standard from the Age Discrimination and Employment Act into a USERRA clam. *See Paxton v. City of Montebello*, 712 F. Supp. 2d 1017, 1021 (C.D. Cal. 2010); *Montoya*, 987 F. Supp. 2d at 1022. Under

---

[4] FedEx Express also argues this dispute is subject to the Railway Labor Act's minor dispute provision because the Court must interpret the Bonus Letter, which is allegedly part of Plaintiff's collective bargaining agreement. However, the Court does not find interpretation of the Bonus Letter to be required to resolve this dispute. *See Wolfe v. BNSF Ry. Co.*, 749 F.3d 859, 864 (9th Cir. 2014) (noting claims are only preempted under the Railway Labor Act if "the need to interpret the [collective bargaining agreement] . . . inhere[s] in the nature of the plaintiff's claim"; however, if plaintiff's claim can be resolved without interpreting the collective bargaining agreement, the claim is not preempted (citation omitted)).

1  this standard, a USERRA violation is willful "if the employer either knew or showed
2  reckless disregard for the matter of whether its conduct was prohibited by the
3  statute."  *Id*.  (citation and quotation omitted); *see also Fryer v. A.S.A.P. Fire &*
4  *Safety Corp., Inc*., 658 F.3d 85, 91 (1st Cir. 2011) ("[T]he term 'willful' as used in §
5  4323(d)(1)(C) of USERRA refers to a knowing violation or action taken in reckless
6  disregard of the obligations imposed by USERRA.").  While the Court finds Plaintiff
7  presented some evidence to suggest FedEx Express knew its conduct was prohibited
8  or recklessly disregarded its obligations under USERRA, including demonstrating
9  Plaintiff was aware of its obligations under USERRA by offering Plaintiff the
10 opportunity to take the MD-11 F/O exam upon reemployment, and apparently
11 retroactively granting Plaintiff his actual earnings for the MD-11 F/O position to
12 December 1, 2006, and his imputed earnings for MD-11 F/O position to May 24,
13 2006 (*see* Exhibit 5), the Court finds Plaintiff failed to prove FedEx Express's
14 actions were willful under the circumstances.

15      26.   Plaintiff is entitled to prejudgment interest on an award of damages
16 under USERRA, calculated pursuant to 28 U.S.C. § 1961 and compounded annually.
17 *See Paxton*, 712 F. Supp. 2d at 1021-22; *Serricchio v. Wachovia Sec., LLC*, 706 F.
18 Supp. 2d 237, 251-52 (D. Conn. 2010), *aff'd*, 658 F. 3d 169 (2d Cir. 2011); *Fink v.*
19 *City of New York*, 129 F. Supp. 2d 511, 525-27 (E.D. N.Y. 2001).  As neither party
20 has proposed a calculation of interest, the parties shall do so no later than fourteen
21 (14) days after entry of judgment.

22      27.   Plaintiff is entitled to "reasonable attorney fees, expert witness fees, and
23 other litigation expenses."  38 U.S.C. § 4323(h)(2); *Serricchio*, 706 F. Supp. 2d at
24 252; *Serricchio v. Wachovia Sec., LLC*, 606 F. Supp. 2d 256, 267-68 (D. Conn.
25 2009); *Paxton*, 712 F. Supp. 2d at 1023.  Plaintiff may move for such fees and costs
26 under Federal Rule of Civil Procedure 54(d).  Fed. R. Civ. P. 54(d).

27 ///

28 ///

### III. CONCLUSION & ORDER

For the above stated reasons, **IT IS HEREBY ORDERED** that judgment be entered against FedEx Express and in favor of Plaintiff in the amount of $10,300, plus prejudgment interest calculated in accordance with 28 U.S.C. § 1961, and reasonable attorney's fees and costs.

**IT IS SO ORDERED.**

DATED: April 9, 2015

Hon. Cynthia Bashant
United States District Judge