# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DALE HUHMANN,<br><br>                Plaintiff,<br><br>   v.<br><br>FEDEX CORPORATION, *ET AL.*,<br><br>                Defendants. | Case No. 13-cv-00787-BAS(NLS)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR ATTORNEYS' FEES, COSTS AND PRE- AND POST-JUDGMENT INTEREST**<br><br>(ECF No. 57) |

     In its Findings of Fact and Conclusions of Law, this Court ruled Plaintiff Dale Huhmann ("Plaintiff") was entitled to attorney's fees and costs and invited Plaintiff to file a request pursuant to Federal Rule of Civil Procedure 54(d). (*See* ECF No. 55.) Plaintiff has now done so, filing a Motion for Attorneys' Fees, Costs, and Pre- and Post- Judgment Interest. (ECF No. 57.) Defendant Federal Express Corporation ("Defendant") opposes the request as unreasonable (ECF No. 61), and Plaintiff has replied (ECF No. 63).

///

As a preliminary matter, in reading Plaintiff's motion, the Court wondered whether Plaintiff was confusing its cases. Plaintiff refers to Defendant's "scorched earth" tactics and "aggressive litigation posture." In fact, this case has been remarkably non-litigious. As Defendant points out, there were no depositions and limited discovery. There were no litigated discovery disputes. There was very limited motion practice. The First Amended Complaint was filed pursuant to a joint motion; there were no motions to dismiss or motions for summary judgment. The fact that the current number of electronic records filed in the case only number 63, demonstrates the unusual lack of litigiousness among the parties. The trial was a three-hour bench trial. The parties largely stipulated to the facts and the result was primarily the resolution of a legal dispute. Plaintiff's accusations seem primarily to revolve around Defendant's failure to make settlement offers. However, short of settling a case with a legitimate cutting edge issue of law, Defendant did not require Plaintiff to expend large amounts of time bringing the case to trial, as is often the case in other civil cases.

The Court finds this motion suitable for determination on the papers submitted and without oral argument. *See* Civ. L.R. 7.1(d)(1). For the reasons set forth below, the Court **GRANTS IN PART** and **DENIES IN PART** Plaintiff's motion (ECF No. 57).

I.   **LEGAL STANDARD**

Although generally in federal court, the "American Rule" is followed, such that a party in a lawsuit bears its own attorney's fees, this can be changed by express statutory authorization to the contrary. *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983); *Camacho v. Bridgeport Financial, Inc.*, 523 F.3d 973, 978 (9th Cir. 2008).[1] District courts calculating attorney's fees by statutory authorization must use the lodestar method, multiplying the number of hours reasonably expended by a

---

[1] Defendant does not contest the Court's ruling in its Findings of Fact and Conclusions of Law that a USERRA case, such as this one, is such a case with express statutory authorization for attorney's fees and costs. *See* 38 U.S.C. § 4323(h)(2).

reasonable hourly rate. *Camacho*, 523 F.3d at 978; *see also Moreno v. City of Sacramento*, 534 F.3d 1106, 1111 (9th Cir. 2008) ("[T]he district court must strike a balance between granting sufficient fees to attract qualified counsel…and avoiding a windfall to counsel. The way to do so is to compensate counsel at the prevailing rate in the community for similar work; no more, no less." (citations omitted)); *Bogan v. City of Boston*, 489 F.3d 417, 426 (1st Cir. 2007) (a court usually begins with the attorney's contemporaneous billing records from which the court should "subtract hours that are duplicative, unproductive or excessive and multiply the reasonable hours billed by the prevailing attorney rate in the community"). The lodestar figure is presumptively reasonable, and it is only rare cases where the district court can adjust this amount up or down. *Camacho*, 523 F.3d at 982. The question then becomes what is the prevailing hourly rate and how many hours were reasonably expended on the litigation.

The reasonable rate is determined by reference to the district in which the judge sits and not to other districts. *Id.* at 979. Current rates, as opposed to rates decided years before, must be used. *Id*. at 981. When calculating the hourly rate, the court should consider certain factors, "including the novelty and difficulty of the issues, the skill required to try the case, whether or not the fee is contingent, the experience held by counsel and fee awards in similar cases." *Moreno*, 534 F.3d at 1114. The burden is on the fee applicant to produce satisfactory evidence of the current reasonable hourly rate in the district. *Camacho*, 523 F.3d at 980. "[D]eclarations of the prevailing market rate in the relevant community…[are] sufficient to establish the appropriate [billing] rate for lodestar purposes." *Davis v. City & Cnty. of S.F.*, 976 F.2d 1536, 1547 (9th Cir. 1992), vacated in part on other grounds, 984 F.3d 345 (9th Cir. 1993) (quotations and citations omitted); *see also Camacho*, 523 F.3d at 980. "'[P]urely clerical or secretarial tasks should not be billed at a paralegal's [or lawyer's] rate, regardless of who performs them…[The] dollar value [of such non-legal work] is not enhanced just because a lawyer does it.'" *Id*. at 1543 (quoting *Missouri v.*

*Jenkins*, 491 U.S. 274, 288 n.10 (1989) (brackets in original)).

With respect to the number of hours billed, "[b]y and large, the court should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case; after all, he won, and might not have, had he been more of a slacker." *Moreno*, 534 F.3d at 1112. The court should not second-guess how other firms might have staffed the case. *Id*. at 1114. However, "the law does not require the district court to compensate for all the time [plaintiff's] counsel spent conferring among themselves." *Terry v. City of San Diego*, 583 Fed. App'x 786, 791 (9th Cir. 2014) (citing *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1203 (9th Cir. 2013) and *Horsford v. Bd. of Trustees of Cal. State Univ*., 132 Cal. App. 4th 359, 673 (2005)).

"Plaintiff's counsel 'is not required to record in great detail how each minute of his time was expended.'" *Fischer v. SJB-P.D., Inc*., 214 F.3d 1115, 1121 (9th Cir. 2000) (quoting *Hensley*, 461 U.S. at 437. n. 12). "Instead, plaintiff's counsel can meet his burden—although just barely—by simply listing his hours and identifying the general subject matter of his time expenditures." *Id*. (internal quotations and citations omitted). However, a district court may impose a percentage reduction in hours that are billed in a block format. *Welch v. Metro. Life Ins. Co*., 480 F.3d 942, 948 (9th Cir. 2007). "Block billing" lumps multiple tasks together and makes it more difficult for the court to determine how much time was spent on a particular activity. *Id*. If, however, a court reduces for block billing, it must determine which bills were "block billed" and apply the reduction to only those blocks. *Id*.; *see also Mendez v. Cnty. of San Bernardino*, 540 F.3d 1109, 1129 (9th Cir. 2008), overruled on other grounds by *Arizona v. ASARCO*, LLC, 773 F.3d 1050 (9th Cir. 2014) (while "block billing" may justify reducing or eliminating certain claimed hours, it does not justify denying all fees).

Fees incurred in proceedings prior to the preparation of a complaint are not recoverable, unless the pre-preparation time was "both useful and of a type ordinarily

necessary to advance the . . . litigation to the stage it reached." *Webb v. Bd. Of Educ. Of Dyer Cnty. Tenn.*, 471 U.S. 234, 243 (1985). "[T]ime spent in establishing the entitlement to and amount of the fees is compensable." *Camacho*, 523 F.3d at 981 (quotation omitted).

Once the presumptively reasonable lodestar amount is determined, the Court must consider the factors set forth in *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67 (9th Cir. 1975), to the extent they are not already subsumed in the lodestar analysis, to determine if the ultimate attorney's fees amount is reasonable: (1) time and labor required; (2) novelty and difficulty of the questions involved; (3) skill requisite to perform the legal service properly; (4) preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent;[2] (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Id.* at 70; *see also Morales v. City of San Rafael*, 96 F.3d 359, 363-64 (9th Cir. 1996). "Among the subsumed factors presumably taken into account in either the reasonable hours component or the reasonable rate component of the lodestar calculation are: (1) the novelty and complexity of the issues, (2) the special skill and experience of counsel, (3) the quality of representation, (4) the results obtained, and (5) the contingent nature of the fee agreement." *Morales*, 96 F.3d 359, 364 n. 9 (9th Cir. 1996) (internal quotations and citations omitted).

An attorney fee award need not be proportionate to the amount of damages a plaintiff actually recovers, where the success of the plaintiff also serves the public interest. *City of Riverside v. Rivera*, 477 U.S. 561, 574 (1986); *see also Cowan v.*

---

[2]  However, an upward adjustment to the lodestar on the basis that the prevailing party's counsel incurred the risk of nonpayment by accepting the case on a contingent fee is improper. *City of Burlington v. Dague*, 505 U.S. 557, 567 (1992).

*Prudential Ins. Co of Am.*, 935 F.2d 522, 524 (2nd Cir. 1991) ("[A]warding attorney's fees in a manner tying that award to the amount of damages would subvert the statute's goal of opening the court to all who have meritorious civil rights claims.") (citation omitted); *Anderson v. AB Painting & Sandblasting, Inc.,* 578 F.3d 542, 545 (7th Cir. 2009) ("Because Congress wants even small violations of certain laws to be checked through private litigation and because litigation is expensive, it is no surprise that the cost to pursue a contested claim will often exceed the amount in controversy.") (citation omitted).

## II.  DISCUSSION

### A.  Calculating the Reasonable Lodestar Amount

Including the additional amounts listed in the reply, Plaintiff's counsel requests attorney's fees in the amount of $270,080.00 as follows: 350.5 hours at a rate of $650 per hour for Mr. Lawler; 133 hours for his associate Mr. Seliga at a rate of $300 per hour; and 15.7 hours for Mr. Seliga before he passed the bar exam in 2013 at a rate of $150 per hour. Defendant objects to this request on eight grounds: (1) the per hour rate is too high for each attorney; (2) counsel submits "block billing", making it impossible for the Court to determine whether the time spent is reasonable; (3) counsel bills an unreasonable amount for internal communications between Mr. Lawler and Mr. Seliga; (4) the bills contain duplicative entries; (5) the bills include unnecessary work or research; (6) the time submitted for pre-complaint investigation is unreasonable; (7) filing the amended complaint was primarily clerical work not requiring the work of an expensive lawyer; and (8) the amount of time billed for trial preparation was excessive given the trial length of only three hours, three witnesses, and no substantive factual disagreement between the parties. The Court will address each objection in turn.

#### 1.  <u>Unreasonable Hourly Rate</u>

Mr. Lawler seeks attorney's fees at hourly rates of $650 per hour for himself, $300 per hour for his associate Mr. Seliga, and $150 per hour for Mr. Seliga before he

1  passed the Bar Exam in 2013.  In support of this request, Mr. Lawler submits a
2  declaration stating that these rates are consistent with the rates charged by other law
3  firms of the same "size, stature, expertise, and reputation in the San Diego
4  community" and that the "rates are reasonable in the San Diego market for a lawyer
5  of [his] skill, expertise in USERRA, and reputation in the community." (ECF No. 57-
6  5 at ¶ 7.)  Mr. Lawler supports this claim with the declarations of Allison Goddard
7  and John Kyle, both attorneys practicing in the San Diego legal community.  (ECF
8  Nos 57-3, 57-4.)

9  Ms. Goddard states that her current hourly rate for class action litigation,
10  recently approved by a San Diego court is $750 per hour, and that, before her rates
11  were raised in 2014, she charged $650-675 per hour, rates that were approved by
12  several local state and federal courts.  (ECF No. 57-3 at ¶¶ 4-5.)  Ms. Goddard further
13  opines:

> I believe [Mr. Lawler's and Mr. Seliga's rates] are well within the
> reasonable range for their experience and the level of skill they
> demonstrated when trying this USERRA case.  In particular, it is my
> opinion that Mr. Lawler's rate is on the low end when compared to the
> hourly rates charged by attorneys with his years of experience [and his
> level of knowledge].

19  (ECF No. 57-3 at ¶ 7.)

20  Mr. Kyle states that he litigated a USERRA case in San Diego, where the court
21  eventually approved attorney's fees in which the hourly rate ranged up to $870 per
22  hour. (ECF No. 57-4 at ¶ 2.)  Mr. Kyle likewise opines that the rates billed in this case
23  are reasonable in the San Diego market for lawyers of this level of skill, expertise in
24  USERRA, and reputation in the community.  (ECF No. 57-4 at ¶ 4.)

25  Mr. Lawler is clearly considered a national authority in USERRA litigation.
26  (ECF Nos. 57-5 at ¶ 6; 57-4 at ¶ 3.)  Samuel Wright, the Director of the Service
27  Members Law Center ("SMLC"), "an organization dedicated to supporting Reserve
28  military personnel and particularly their rights under USERRA," and an original

drafter of USERRA, opines that he and the SMLC "consider Mr. Lawler to be a national authority on the topic of USERRA." (ECF No. 57-2 at ¶¶ 1, 3.)

Defendant presents no evidence contradicting the declarations submitted by Plaintiff that the rates requested are reasonable ones in the San Diego legal community. Therefore, to the extent Defendant objects that the rates are unreasonably high, this Court denies the objection. The Court finds the rates to be reasonable.

2.  Internal Communications Between Mr. Lawler and Mr. Seliga

Defendant argues that all bills reflecting internal communications and/or conferences between Mr. Lawler and Mr. Seliga should be eliminated. Although the law does not require this Court to approve all internal communications between lawyers, a certain amount of communication is necessary and even desirable to keep costs down.

From March 2013 until July 2013, when Mr. Seliga ostensibly passed the Bar exam, Mr. Lawler and Mr. Seliga bill for eleven conversations, including phone conversations and email correspondence. To the extent these conversations were billed as separate items, the time is limited to .5 or .6 hours per conversation. (*See* ECF No. 57-6 at pp. 2-3, 9.) The remaining time is block billed, but the billed work does not appear to overlap. Mr. Seliga makes edits to the Complaint, while Mr. Lawler conducts research, reviews the edits, and communicates with the client and opposing counsel. (*See id.*)

From July 2013, through the end of that year, Mr. Lawler and Mr. Seliga bill for ten communications. (*Id.*) Most of these are block billed, so the Court is unable to determine the exact length of most of these conversations. However, the two attorneys converse for .6 hours regarding the ENE statement, 1.2 hours regarding motion for summary judgment issues, and .8 hours regarding Defendant's discovery. (*Id.* at p. 3.)

In 2014, the two individuals bill for nineteen conversations. (*Id.* at pp. 4-5.) For the entries that are not block billed, the length of time for each conversation billed

varies from .4 to .8 hours. (*Id.*) Again, the billed work during this period does not appear to overlap, with Mr. Lawler handling much of the research, edits, and communications with opposing counsel and the client, and Mr. Seliga primarily handling discovery issues. (*See id.*) In 2015, the two individuals bill for twelve conversations. (*Id.* at pp. 5-6.) Most of these occur at the end of March just before the trial and relate to trial preparation, and several are conducted with the client. (*Id.*)

After reviewing the entries, the Court does not find the total number of communications over a two-year time span to be unreasonable, nor does the Court find the amount of time billed to be unreasonable. The time entries only reflecting conversations between Mr. Lawler and Mr. Seliga are reasonable in length, and although several of the conversations were contained in block billed entries, the entries taken as a whole reflect that many of the conversations served the purpose of assigning work to a clerk/junior associate. The conversations therefore lowered the expense to the client, and ultimately this fee request, by having an attorney with a lower hourly rate handle certain tasks. For the foregoing reasons, the Court declines to decrease the bill for internal communications.

### 3. Duplicative Entries

Defendant lists numerous entries that it contends are duplicative billing either by Mr. Lawler or by Mr. Lawler and Mr. Seliga. The Court has reviewed the allegedly duplicative billings and declines to reduce the bills as requested. To the extent both Mr. Lawler and Mr. Seliga reviewed a document, either issued by the Court or filed by opposing counsel, this was necessary to keep each apprised of the case. In addition, the Court declines to find that both attorneys meeting with a client or attending a court proceeding constitutes duplicative billing. In effect, Defendant is asking the Court to second-guess Plaintiff's staffing of the case, and this the Court declines to do. *See Moreno*, 534 F.3d at 1112-14.

Finally, the Court finds it reasonable that both attorneys worked on editing documents such as the Complaint, the discovery responses, the Pretrial Order, and the

Findings of Fact and Conclusions of Law.  It is common and entirely reasonable for a clerk/junior associate to draft documents, and for a senior lawyer to review and edit them.  The Court finds no unnecessary duplicative work and declines to reduce the bill for this reason.  *See Mendez*, 540 F.3d at 1129 ("Even duplicative work, however, is not a justification for cutting a fee unless the lawyer does *unnecessarily* duplicative work." (citation and internal quotations omitted)); *see also Kim v. Fujikawa*, 871 F.2d 1427, 1435 n.9 (9th Cir. 1989) ("[T]he participation of more than one attorney does not necessarily constitute an unnecessary duplication of effort.").

### 4.  Unnecessary Work or Research

Defendant objects to two categories of bills as unnecessary work or research.  First, Defendant objects to billing for motions *in limine*, since no motions *in limine* were filed in this case.  Mr. Lawler submits a bill for 1.8 hours for reviewing and editing motions *in limine* (ECF No. 57-6 at p. 5), and Mr. Seliga submits a bill for 2.8 hours for drafting motions *in limine* (ECF No. 57-6 at p. 8).  Second, Defendant objects to research and consulting time spent on statute of limitations issues because, although Defendant raised the statute of limitations as a defense, "no such defense was pursued or ever presented for consideration by the court" and Plaintiff should have known it wasn't a viable defense under the statute.  (ECF No. 61, pp. 5-6.)

Neither objection is well-taken.  First, although no motions *in limine* were filed, that does not mean no motions *in limine* were contemplated.  The Court set a hearing date for any motions *in limine*, and Plaintiff had every right to draft and consider filing such motions.  (*See* ECF No. 43.)  Second, Defendant raised the statute of limitations as a defense prior to any relevant research being done.  (*See* ECF No. 12 at p. 6; ECF No. 57-6 at pp. 3, 7.)  This affirmative defense was never withdrawn.  Mr. Lawler was justified in researching and determining whether this was going to be a viable defense for trial.  Defendant cannot now complain that this defense, which it raised, was obviously not viable.  The Court therefore declines to reduce these hours.

///

### 5. Pre-Complaint Investigation

Defendant claims that the 47.6 hours billed before the Complaint was filed for conferring with the client, reviewing materials, researching the issues, and drafting the Complaint is excessive. Defendant points out that Mr. Lawler is an experienced expert in USERRA and that he had already pursued this case on behalf of Plaintiff to conclusion with the Department of Labor, therefore the facts and legal arguments were already well-developed.

Nonetheless, this Court is not prepared to say that 47.6 hours to make sure the facts were clearly and accurately stated in the Complaint and the proper causes of action were accurately plead is unreasonable. *See Moreno*, 534 F.3d at 1112 ("By and large, the court should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case; after all, he won and he might not have, had he been more of a slacker.") While Mr. Lawler may have already pursued this case on behalf of Plaintiff with the Department of Labor, there is nothing to indicate this was a pro forma complaint, cut and pasted from a prior complaint filed by Mr. Lawler. Accordingly, the Court declines to reduce these hours.

### 6. Time Spent Drafting and Filing Amended Complaint

After filing the original Complaint, Defendant informed Plaintiff that one of the defendants sued, FedEx Corporation, was not a proper party. Pursuant to a stipulation, Plaintiff filed a one-paragraph joint motion to dismiss this party (ECF No. 5), and then a one-paragraph joint motion for leave to file a first amended complaint eliminating FedEx Corporation from the complaint and dismissing one cause of action from the complaint (ECF No. 9). The First Amended Complaint was identical to the original Complaint, except that the party mentioned in paragraph 4 and the cause of action listed in paragraphs 41-47 were eliminated.

The following bills pertaining to these actions have been submitted. Mr. Lawler submits the following time:

June 21        (4.7 hours) Emails w opposing counsel re Stip to Dismiss

|  |  |
|---|---|
|  | and amended complaint; review proposed Stip and proposed Order; review filed Joint Motion to Dismiss; email, phone con w BJS re filing amended complaint |
| June 24 | (5 hours) Emails and phone calls with opposing counsel re dismissal, amended complaint, emails, phone con w clerk re filing amended complaint; review Answer; review Order terminating party; emails w client |
| June 25 | (3 hours) Draft motion to file FAC, edit FAC; emails to opposing counsel re FAC |
| June 27 | (1.8 hours) File Motion to file FAC; emails w opposing counsel; file proposed Order with chambers |
| June 28 | (.8 hours) Review Order granting Motion to file FAC; finalize/file FAC |

(ECF No. 57-6 at pp. 2-3.)  Mr. Seliga, who was acting as a paralegal at the time, submits the following time:

| June 21 | (.6 hours) Email, phone con w BJL re Filing Amended Complaint |
|---|---|
| June 24 | (.6 hours) Email, phone con w BJL re filing amended complaint |

(*Id.* at p. 9.)  Thus, Mr. Lawler and Mr. Seliga together have submitted 16.5 hours to file two one-paragraph stipulations, and a First Amended Complaint virtually identical to the original except that a party and a cause of action have been removed.

Defendant argues this work could have been done by a less expensive clerk (or perhaps Mr. Seliga who was billing at $150 per hour at the time), and that the amount billed is excessive.  The Court cannot agree.  Although Defendant notified Plaintiff's counsel that FedEx Corporation was not a proper party to the lawsuit and prepared and filed the joint motion to dismiss FedEx Corporation on June 21, 2013, Plaintiff still had to make the determination of whether or not to eliminate a cause of action. Defendant does not address this consideration in its motion.  The joint motion for leave to file the First Amended Complaint in which Plaintiff agreed to dismiss the cause of action without prejudice was not filed until June 27, 2013.  For this reason, the Court cannot find that conversations between counsel and revisions to the First

Amended Complaint during this time were unreasonable, and declines to reduce these hours.

### 7. Time Spent on Trial Preparation

Defendant argues that the amount of time spent on trial preparation was excessive given the fact that this was a three-hour bench trial with agreements as to most of the facts. Defendant asks that the 107 combined hours billed by Mr. Lawler and Mr. Seliga be reduced. However, the attorneys' billing records regarding trial preparation include drafting findings of fact and conclusions of law, reviewing defendant's findings of fact and conclusions of law, researching issues raised by defendant's conclusions of law, drafting witness and exhibit lists, reviewing defendant's witness list and exhibits, discussing and setting up electronics, calling opposing counsel and the court clerk regarding the same, preparing direct exam of Plaintiff, witness preparation and cross, reviewing trial procedures, and labeling, sorting and delivering exhibits to the court. Given this amount of detail, and the uncertainties that any trial can bring, even a bench trial, the Court cannot say the combined 107 hours was unreasonable. Moreover, although the bench trial was ultimately three hours long, the parties estimated a period of two days. (*See* ECF No. 35.) The Court will not second guess the strategy that went into Plaintiff's trial preparation.

### 8. "Block Billing"

The bills presented by Plaintiff appear to be grouped by day, combining all work done on the case on that day with a laundry list of all tasks completed on that day, and a total number of hours spent on all the tasks. This lumping together of tasks or "block billing" does make it difficult for the Court to review the tasks completed and see if the time spent is reasonable.

In *Welch*, the Ninth Circuit agreed that a district court may reduce hours that are billed in block format. *Welch*, 480 F.3d at 948. In that case, the district court had imposed a 20% across the board reduction because the attorneys had submitted block

bills rather than itemizing each task individually. *Id*. The district court had arrived at its 20% reduction based on a report by the California State Bar's Committee on Mandatory Fee Arbitration, which concluded that block billing may increase time by 10-30%. *Id*. Although the appellate court had no problem with the idea of a 20% reduction, it found that the district court erred in applying the 20% reduction to all billing when barely more than half the bills submitted were block billed. *Id*.

In this case, unlike in *Welch*, the attorneys do not separate out bills by task, but by day. Therefore, almost all of the entries are block billed. It is only those days where one isolated task is performed that multiple entries are not block billed. Because most of the bills are block billed, making it difficult for the Court to determine whether the block billed time spent is reasonable, and because block billing is likely to increase time by 10-30%, the Court finds reduction of all block billing by 20% to be reasonable.

Mr. Lawler requests $227,825.00 in attorney's fees comprising a total of 350.5 hours at $650 per hour. Of these hours, only 75.4 hours are not block billed. The Court applies the 20% reduction to the 275.1 block billed hours. Accordingly, the Court finds Mr. Lawler's reasonable fees to be $192,062.00. Mr. Seliga requests $42,255.00 in attorney's fees comprising a total of 133 hours at $300 per hour, and 15.7 hours at $150 per hour. Of Mr. Seliga's 133 attorney hours, only 27 hours are not block billed, and of Mr. Seliga's 15.7 paralegal hours, only 3.3 hours are not block billed. Accordingly, the Court finds Mr. Seliga's reasonable fees to be $35,523.00. Altogether, the Court finds attorney's fees in the amount of $227,585.00 to be the lodestar amount. The Court will now turn to the *Kerr* factors not subsumed into the lodestar analysis to assess whether this amount is reasonable.

### B.  Applying the *Kerr* Factors

####   1.  Awards in Similar Cases

Although Plaintiff's counsel submits evidence that another USERRA case received a much higher overall attorney's fees award than the amount requested in

this case (ECF No. 57-9), the Court finds this is not a fair comparison. As discussed above, this was not a very litigious case. It did not involve anywhere near the court appearances, brief drafting and writing, or court preparation time that the case submitted by Plaintiff's counsel did. Therefore, looking at the last *Kerr* factor, the Court has no evidence of awards in similar cases with similar time requirements.

### 2. Time and Labor Required; Preclusion of Other Employment; Time Limitations

Turning to the first *Kerr* factor, the Court finds this case did not require the excessive time and labor Plaintiff's counsel seems to imply. Due to the fact that this was not a litigious case, that there was very little time spent in court, even including the three-hour bench trial, the Court also does not believe Mr. Lawler or his associate Mr. Seliga were precluded from accepting other employment due to their acceptance of this case. Additionally, there is no information that specific time limitations were imposed by Plaintiff or the circumstances of the case. Therefore, the first, fourth, and seventh *Kerr* factors do not support a large fee award.

### 3. Customary Fee; Nature of Fee; Nature and Length of Relationship

The Court has no information as to how much of a fee is customary overall, other than the individual hourly fees that are customary in San Diego as discussed above. The Court also has no information on the nature and length of counsel's professional relationship with Plaintiff. Therefore, the fifth and eleventh factors are neutral in this case.

### 4. Undesirability of Case; Amount Involved

Finally, the amount involved, $10,300.00 in back pay, was a relatively small amount. It is certainly quite a bit less than Plaintiff's counsel is now billing. This might make the case more undesirable to other attorneys. Furthermore, the implications and the results obtained may have far-reaching consequences for other potential plaintiffs and employees working for Defendant. Therefore, the Court finds the eighth and tenth *Kerr* factors also support Plaintiff's request for a large attorney's

fee award in this case.  In addition, Plaintiff's success in this case may also serve the public interest, reminding employers of their duty to follow USERRA.

Taking into consideration all of the *Kerr* factors, the Court does not find the lodestar amount of $227,585.00 should be increased or decreased in this case. Therefore, attorney's fees in this amount are awarded to Plaintiff's counsel.

### C. Plaintiff's Request for Costs

Plaintiff asks the Court to order Defendant to pay $2,944.76 in costs.  $2,370.00 of this amount appears to be travel-related expenses for Plaintiff to travel to San Diego for this case (hotels, meals, cabs, mileage reimbursement).  Plaintiff cites no authority for the Court to award these expenses as costs.  Plaintiff chose this forum.  He could have chosen a forum closer to his home and not required travel expenses to San Diego. Therefore, the Court declines to award travel reimbursement to Plaintiff for his travel to the Southern District of California.

In addition, Plaintiff requests $250.00 reimbursement for "Trial Director training meeting" and $249.00 for "Legal Research costs (out of plan docs)." Defendant objects to these costs, pointing out that there is no information as to what or why these costs should be reimbursed.  In his reply, Plaintiff does not further elucidate as to the nature or justification for these costs.  Therefore, the Court declines to award costs for these two items.

Defendant does not object to the remaining amount of $75.76 for "document/file copying."  Therefore, the Court will award Plaintiff costs in this amount.

### D. Interest

Plaintiff requests pre- and post-judgment interest at a rate of 0.25% compounded annually, calculated pursuant to 28 U.S.C. § 1961. (*See* ECF No. 57-1 at p. 6, n. 1.) Defendant voices no objection to this request.  As noted in the original judgment, Plaintiff is entitled to pre- and post-judgment interest.  *See* 28 U.S.C. § 1961; *Price v. Stevedoring Servs. of Am., Inc.*, 697 F.3d 820, 836-37 (9th Cir. 2012);

*Paxton v. City of Montebello*, 712 F. Supp. 2d 1017, 1021-22 (C.D. Cal. 2010). Therefore, the Court awards pre-judgment interest at a rate of 0.25% compounded annually, or $217.52, and post-judgment interest at the same rate.

### III.  CONCLUSION

For the reasons set forth above, Plaintiff's motion for attorney's fees, costs, and interest is **GRANTED IN PART** and **DENIED IN PART**.  (ECF No. 57.)  Defendant is ordered to pay $227,585.00 in attorney's fees, $75.76 in costs, $217.52 in pre-judgment interest, and post-judgment interest at a rate of 0.25% compounded annually.

**IT IS SO ORDERED.**

DATED:  October 16, 2015

Hon. Cynthia Bashant
United States District Judge